## BARNUM *vs.* HEMPSTEAD and others.

An assignment for the benefit of creditors, by an insolvent assignor, which contains a provision for the payment, out of the proceeds of the assigned property, of future advances to the assignor, or of future liabilities which the assignees may assume for him, in preference to or to the exclusion of the debts which are due to creditors whose debts had been contracted previous to such assignment, is fraudulent and void as against such creditors.

The only conveyance in trust for the benefit of creditors which is allowed by the revised statutes, and which can have the effect to transfer the legal title of real property to the trustees, is a simple conveyance in trust to sell the assigned property, for the benefit of the creditors, and to apply the proceeds to the payment of the debts due to them. In such an assignment in trust, the equitable interests of the creditors in the property are such that the legal title of the trustees is incapable of being divided into several distinct estates, of which some may be valid although the others are invalid.

Where a conveyance to trustees, in trust to sell the assigned property for the benefit of creditors, is coupled with other express trusts not authorized by law, the conveyance is inoperative, and will not transfer the title in the assigned property to the trustees.

An assignment of his property by an insolvent for the benefit of his creditors, which assignment confers upon the trustees a discretionary power to give a future preference to a creditor, or to a class of creditors over others, in payment out of the proceeds of the assigned property, is fraudulent and void as against the creditors of the assignor.

THIS was an appeal from the decision of the late vice chancellor of the eighth circuit, refusing to dissolve an injunction. The complainant was a judgment creditor of Hempstead & Keeler, and his execution upon the judgment had been returned unsatisfied. He thereupon filed his bill against them and the three other defendants in this cause, to set aside an assignment, of all the real and personal estate and choses in action and effects of Hempstead & Keeler, to the other three defendants, on the ground that the assignment was void upon its face, and was intended to delay and hinder the complainant and other creditors in the collection of their debts. The assignment contained no express trust to sell the real or personal estate for the benefit of creditors; but the whole was conveyed upon the trust that the effects and the proceeds of the settlement of the estate assigned, and of the sale of the property, should be applied, *firstly*, to discharge the cost and expenses of executing the trust; *secondly*, to pay to Lay, one of the assignees, such sums of money as should from time to time be due to him from the assignors, and all such sums of money as he then was or should thereafter become liable to pay, or should pay, on account of the assignors, as endorser or otherwise; and certain other sums, to his creditors named in the assignment, for monies which had been borrowed of them; *thirdly*, to pay the claims of all the endorsers of the assignor not provided for in the second class, and certain other creditors specified in the third class; and *fourthly*, to pay all the other creditors of the assignors rateably. And for the purpose of the better enabling the assignees to effect a settlement of the debts and credits of the assignors, the assignees were constituted the attornies of the assignors, with full power in their names or the names of the assignees to bargain, sell, convey, release, remise and *encumber* any or all of the real estate, and to sell, dispose of, *exchange* and deliver any or all of the personal property in any manner, and to collect, receive, receipt, cancel, sell, negotiate, release, assign, deliver or discharge the debts and evidences of debt so assigned, as fully and in the same manner as the assignors themselves might or could do. The assignment then contained a clause empowering

1839.

Barnum
v.
Hempstead.

the assignees, *in their discretion*, to pay in money or property or securities or otherwise, any claims or demands against the assignors on account of any contracts in relation to building, or for lands, or upon any mortgage which they were liable to pay, or for any rent then due *or to become due* on leases then executed; and also to discharge all small debts due or to become due to persons in Buffalo, to an amount not exceeding in the whole five hundred dollars, in *preference* to any other classes of creditors.   The defendants in their answer denied any intentional fraud in the assignment, and insisted that the provisions giving discretionary power to the assignees, to give preferences in the payment of certain claims and debts, were inserted in the assignment to prevent and avoid great sacrifices of property, and consequent loss to the creditors.

*C. B. Lord & T. Hastings*, for the complainant.

*S. C. Hawley & S. E. Sill*, for the defendants.

The Chancellor.  The first objection which is made to the validity of the assignment in this case is, that it contains a provision to pay to Lay, one of the assignees, for his future advances to and future liabilities for the assignors, in preference to, or to the exclusion of the debts which are due to creditors whose debts had been contracted by the assignors previous to the assignment.   If I was satisfied that such was the fair construction of the instrument, I should not hesitate for a moment to declare it fraudulent and void, upon that ground alone; as such an attempt to secure a future credit and benefit to the assignors, by means of the assigned property, to the prejudice of their present creditors, could not be sustained in any court.   I am inclined to think, however, that this clause of the assignment will bear the construction that the monies therein referred to, which Lay might thereafter pay or become liable to pay on account of the assignors, was only meant to include such as he might pay, or become liable to pay, by reason of endorsements or

other contingent responsibilities which he had already made, or incurred, on their account.

The trust, so far at least as the real estate is concerned, appears however to be one which is not authorized by the existing laws of this state. The express trusts which are allowed by the revised statutes appear to be confined to the four classes specified in the fifty-fifth section of the article relative to uses and trusts. (1 *R. S.* 728.) And the statute is imperative, that where an express trust shall be created for any purpose not enumerated in the statute, no estate shall vest in the trustees. (*Idem*, 729, § 58.) . The only enumerated trusts, for the benefit of creditors, which can have the legal effect of transferring the estate to the trustees, are simple trusts to sell lands for the benefit of creditors ; in which cases the equitable interests of the creditors in the property are such that the legal title, which is conveyed to the trustees, is not capable of being divided into several distinct estates, of which some may be valid although the others are invalid. And this court has already decided that if a conveyance in trust, for that purpose, is coupled with other express trusts not enumerated in the statute, and therefore not authorized by law, the title does not pass to the assignees by virtue of the conveyance in trust. An assignment in trust to mortgage or lease real estate, as well as to sell it, for the benefit of creditors, or as in this case to sell or *encumber* it for the benefit of creditors, cannot be sustained as a legal transfer of the estate, in trust. (*Rogers & Sagary* v. *De Forest and others, In Chan.* 4th *Dec.* 1838.) (*a*)

Again ; the provision, in this assignment, giving to the assignees a discretionary power to pay off or discharge a certain class of claims against the assignors, or certain small debts due from the latter, in preference to other debts provided for in the assignment, appears to be calculated necessarily to injure, delay and hinder creditors in the collection of their just debts. So long as debtors are permitted to make assignments of their property, in trust, for payment of

---

(*a*) Ante, p. 172.

their debts, without consulting their creditors on the subject, it is absolutely necessary, for the protection of the rights of the latter, that the equitable interests in the assigned property should be fixed and determined by the assignment itself. Neither the debtor, nor his friendly assignees, who are generally selected by himself, should have the power of giving preferences afterwards to any class of debts, or of creditors, whereby such creditors might be induced to relinquish some part of their claims, or to refrain from enforcing the same against the trust fund in the hands of the assignees, in the hope of obtaining a preference in payment on account of such indulgence, or by the relinquishment of a part of their claims. And an assignment which thus places any of the creditors in the power of the debtor, or of his assignees, must have the effect to delay or hinder his creditors in the collection of their debts. This view of the case is fully sustained by the opinion of Mr. Justice Sutherland, in the case of *Grover* v. *Wakeman,* (11 *Wend. Rep.* 203.) He says, " It has repeatedly been decided that an assignment which does not declare the uses, but reserves to the assignor the power of subsequently doing it, is fraudulent and void. And if the assignor cannot reserve the power to himself of giving preference, he certainly cannot legally confer it upon his assignee : the same objection in principle exists in both cases."

For these reasons I think the assignment in this case is void as against the creditors who think proper to repudiate the same. The decision of the vice chancellor which was appealed from was therefore right, and must be affirmed with costs.